DAISY LOVERING KRAUTHOFF & another *vs.* ATTORNEY
GENERAL & others.

Suffolk. November 29, 30, 1920. — November 22, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Equity Pleading and Practice,* Bill. *Equity Jurisdiction,* Ecclesiastical controversy, Charity.

A bill in equity by members of The First Church of Christ, Scientist, in Boston, Massachusetts, brought on behalf of themselves and of all others who might elect to join as plaintiffs, contained eighty-one paragraphs, recited the history of Christian Science and details of the development of a controversy between the Christian Science Board of Directors and the trustees of The Christian Science Publishing Society, asked for the establishment by decree of the relation of the founder of Christian Science to that religion and what are its teachings, as to the nature of The First Church of Christ, Scientist, in Boston, Massachusetts, and as to the authoritative character of the Church Manual; for a

determination as to the Christian Science Board of Directors, the sources of their authority and the present members; for a determination that the "First Members" of "The Mother Church" have been abolished and have ceased to exist; for protective orders in accordance with the Church Manual concerning The Christian Science Publishing Society and for declarations concerning the nature and scope of the gifts of the founder of the Christian Science publishing business and its connection with The Mother Church, and the relations between that church, the directors and the trustees in the light of the Church Manual. The Attorney General and numerous other parties were made defendants and it was shown in the bill that the Attorney General was undertaking to represent and protect the public interests by a separate proceeding. *Held*, that demurrers by the defendants must be sustained, because

(1) The bill was multifarious in seeking relief respecting separate and distinct matters;

(2) The bill sought a determination of certain matters relating to the scope and nature of the principles of a religious denomination, which the court will not adjudicate unless imperative necessity therefor is shown; and no such imperative necessity appeared;

(3) As to such matters within the scope of the bill as related to public charities, the plaintiffs showed no private interest and, on the averments of the bill, such interests as the public had were being represented by the Attorney General in another proceeding.

BILL IN EQUITY, filed in the Supreme Judicial Court on March 31, 1920, and afterwards amended, by Daisy Lovering Krauthoff and Edwin A. Krauthoff, alleging themselves to be "members in good standing of The First Church of Christ, Scientist, in Boston, Massachusetts, and as such" bringing "this suit on behalf of themselves and of all other members of the church who may elect to become parties hereto and join in this effort to preserve and uphold the church manual, the form of government of The Mother Church as established by Mary Baker Eddy, and the activities thereof founded by her." The material allegations of the bill are described in the opinion.

On June 1, 1920, the Attorney General filed a plea, alleging that he did so "without in any manner waiving his demurrer filed in the above entitled cause," that The First Church of Christ, Scientist, is a public charitable trust, and that the deed of January 25, 1898, (see *ante*, 60–63,) created a public charitable trust subsidiary thereto and as one of the activities thereof; that on May 26, 1920, he had filed an information in the nature of a bill in equity in which he asserted "all the rights of the adherents of said church and of the public generally as beneficiaries of said charitable trusts," and that this bill of complaint disclosed no interest of the plaintiffs

in the charitable trusts referred to, "except as adherents of said' Church and as members of the public, as to which the plaintiffs. are fully represented by the Attorney General" as plaintiff in his. information. Issue was joined on this plea on June 5, 1920.

On June 19, John V. Dittemore, on June 23, the Attorney General, on June 24, the trustees of the Christian Science Publishing Society, and on June 29, 1920, one Julia S. Bartlett, severally filed demurrers. On July 13, Z. Lewis Dalby was joined as a. party plaintiff.

The suit came on to be heard before *Braley,* J., "upon the bill' as finally amended, the several demurrers thereto, and the plea of the defendant the Attorney General." He found the allega-- tion of fact "that on May 26, 1920, the Attorney General filed' in this court an information in the nature of a bill in equity,'" to be true; and, with the assent of parties, reserved the suit upon the bill and the several demurrers and the plea for determination. by the full court.

*E. A. Krauthoff & D. L. Krauthoff, pro se.*

*W. G. Thompson,* (*F. S. Streeter* of New Hampshire, *F. C. Demond & G. E. Mears* with him,) for Dittemore.

*C. E. Hughes* of New York, (*S. L. Whipple, L. Withington,. S. H. Strawn & R. H. Hollen* with him,) for the trustees of The· Christian Science Publishing Society.

*J. W. Allen,* Attorney General, (*E. A. Abbot, Jr.,* Assistant Attorney General with him,) for the Attorney General.

Rugg, C. J. This suit in equity as amended is brought by three persons who allege that they are members in good standing of The First Church of Christ, Scientist, in Boston, Massachu-- setts, and that they bring this suit "on behalf of themselves and of all other members of the Church who may elect to become parties hereto and join in this effort to preserve and uphold the: Church Manual, the form of government of The Mother Church as established by Mary Baker Eddy, and the activities thereof founded by her." Numerous persons are named as defendants.

The bill contains paragraphs numbered consecutively from one to eighty-one both inclusive. The first fifteen paragraphs de- scribe the various parties. Those numbered sixteen to thirty-eight inclusive purport to set out a history of Christian Science from its discovery in 1866 by Mrs. Eddy until she "departed her so--

called natural life" in December, 1910. It includes reference to her deed of September 1, 1892, to the directors of the church and to that of January 25, 1898, to trustees of personal property connected with the publications in support of Christian Science. There is reference in paragraph thirty-eight to the will of Mrs. Eddy, in paragraph thirty-nine to St. 1913, c. 115, and in paragraph forty to Spec. St. 1917, c. 132. There is description of the various publications issued in advocacy of Christian Science in paragraphs forty-one to fifty-four. In paragraph fifty-five there are allegations concerning the growth of Christian Science and the ·cause of that growth. In paragraphs fifty-six to sixty-six are allegations narrating the beginning, development and culmination of the controversy between the trustees under the trust deed of· January 25, 1898, and the church directors, together with comments upon the positions assumed from time to time by the parties to that controversy. There is in paragraph sixty-six a summary of the master's report in *Eustace* v. *Dickey, ante,* 55, with a long criticism of many of its conclusions. The remaining paragraphs relate to the suit of *Eustace* v. *Dickey* and its consequences, the contentions of the plaintiffs therein, and to the Church Manual, its provisions and their binding force. The substance of the bill has been stated only in most general outline. There are many allegations subsidiary and in addition to and in amplification of those here summarized not easily susceptible of compression into brief space.

There are ten prayers. The first three prayers ask for the establishment by decree as to the relation of Mrs. Eddy to the religion of Christian Science, and what are its teachings, as to the nature of The First Church of Christ, Scientist, in Boston, Massachusetts, and as to the authoritative character of the Church Manual; the fourth and fifth seek a determination as to the Christian Science board of directors, the sources of their authority and the present members; the sixth asks a determination that the First Members of The Mother Church have been abolished and ceased to exist, and the seventh for protective orders in accordance with the Church Manual concerning the Christian Science Publishing Society. The eighth prayer in six subdivisions seeks declarations concerning the nature and scope of the gifts of Mrs. Eddy of the Christian Science publishing business and its connection with The

Mother Church, and the relations between this church, the directors and the trustees in the light of the Church Manual. Demurrers were filed by several of the defendants, and the Attorney General beside demurring also filed a plea. The case comes before us on a reservation upon the bill, demurrers and plea. It is not necessary to decide as to the pleadings filed by the Attorney General whether a general plea is a waiver of a general demurrer, because the questions raised by the demurrer are expressly reserved by the single justice. *Eastman Marble Co.* v. *Vermont Marble Co.* 236 Mass. 138, 151.

The bill is multifarious. It seeks relief respecting distinct and separate matters. Many of its paragraphs relate to the scope and nature of the principles of the religious denomination known as Christian Science. This subject ordinarily is settled by ecclesiastical bodies. Courts are loath to undertake to determine such questions. The standards by which to decide controversies of that kind are not those commonly used by courts. *Grosvenor* v. *United Society of Believers,* 118 Mass. 78. *Carter* v. *Papineau,* 222 Mass. 464. *Attorney General* v. *Armstrong,* 231 Mass. 196, 204. The averments of the bill show no imperative necessity for deciding them in this proceeding. The bill joins divers matters having no necessary relation to each other. *Saltman* v. *Nesson,* 201 Mass. 534, 539. *Reno* v. *Cotter,* 236 Mass. 556, 563. Some of its averments proceed upon the footing that some if not all of the organizations or trusts established in connection with Christian Science are public charities. In these aspects the plaintiffs show no private interest, and the interests of the public are represented by the Attorney General. *Burbank* v. *Burbank,* 152 Mass. 254. *Crawford* v. *Nies,* 224 Mass. 474. The bill shows by its own averments that the Attorney General is undertaking to represent and protect the public interests by proceedings in his own behalf. The decision in *Eustace* v. *Dickey, ante,* 55, settles some of the important questions sought to be raised in this proceeding.

*Demurrers sustained.*