N. Oscar Sidlow, administrator, *vs.* Bernadette Gosselin [now Sheridan] & others.

Worcester.   September 22, 1941. — December 29, 1941.

Present: Field, C.J., Qua, Dolan, Cox, & Ronan, JJ.

*Probate Court*, Report of material facts, Appeal. *Equity Pleading and Practice*, Report of material facts, Appeal. *Gift*.

Where a judge of probate, without a report of the evidence heard by him in a proceeding in equity, made a report which purported to be under G. L. (Ter. Ed.) c. 215, § 11, but which, while containing some findings of fact, also contained recitals of material testimony without findings based thereon and did not contain any ultimate conclusion of fact on the determining issue, this court affirmed the final decree because it was supported by the facts which were found, although the recited testimony, if believed, would have warranted a contrary decree.

A conclusion that a savings bank deposit had not been given by a woman to her grandniece but remained an asset of her estate was proper on findings that the deposit stood in the woman's name at the time of her death and that the grandniece had made statements that the woman's assets were of an amount which must have included the deposit, although the bank book and an unsigned withdrawal order naming the grandniece were in the possession of the grandniece at the time of the woman's death.

Petition in equity, filed in the Probate Court for the county of Worcester on January 10, 1940.

The case was heard by *Wahlstrom, J.*

*J. J. Philbin,* (*A. A. Philbin* with him,) for the respondent Sheridan.

*P. F. Shaughnessy,* (*R. T. Lilly* with him,) for the petitioner.

DOLAN, J. This is a petition in equity in which the petitioner as he is administrator of the estate of Annestia E. Murrey, otherwise known as Annestia E. Murray, seeks to establish title to a deposit in the Worcester North Institution for Savings standing in the name of the intestate at the time of her death, and to compel Bernadette Gosselin Sheridan, hereinafter called the respondent, to deliver the "bank book" to him. The respondent claimed ownership of the deposit by virtue of an alleged "gift and transfer" thereof to her by the intestate.

After hearing, the judge entered a decree that the deposit in question and a deposit in the Clinton Trust Company (claim to which the respondent has waived) "are the property of the estate of . . . [the intestate]." The respondent appealed and at her request the judge filed a "Report of Findings of Material Facts." The evidence is not reported. The report, however, does not comply with the requirements of G. L. (Ter. Ed.) c. 215, § 11 (see also c. 214, § 23), as established by many prior decisions of this court, since the report, so far as the deposit now in dispute is involved, consists for the most part of a recital of the testimony of certain witnesses, concerning which in important aspects no findings are made by the judge, although most of the testimony recited, if believed by him, would warrant if not require a finding of a perfected gift of the deposit by the intestate in her lifetime to the respondent. There is no ultimate finding by the judge in the report with relation to whether a gift of the deposit in question was in fact made to the respondent by the intestate, or whether at her death it constituted an asset of her estate.

Reports of material facts provided by G. L. (Ter. Ed.) c. 215, § 11, to be made in the Probate Court upon the request of any party entitled to appeal therefrom, are governed by the same principles as apply in cases of such reports in equity under c. 214, § 23, which is phrased in

substantially the same language.  The finding of facts contemplated by the statute constitutes the substance of the conclusions made by the judge from the evidence and is the foundation upon which the decree rests.  *Smith* v. *Smith*, 222 Mass. 102.

When a judge makes a report of material facts under the statutes "he does not make a report of the evidence but recites certain facts which he considered as material and which in his opinion formed the basis of his decision.  It is not a new or additional proceeding after the termination of the case by final decree, but is in the nature of an extension of the record in the form of a statement of facts in the mind of the judge when his decision was made, which, when included in the record, puts the case in proper form for hearing on the appeal."  *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 214.  Where such a report is made and the evidence, as in the present case, is not reported under G. L. (Ter. Ed.) c. 215, § 12, the only question presented for our determination is whether the decree entered is supported by the material facts found by the judge under § 11;  the report is regarded as a finding of all the material facts upon which his decision was founded, *Topor* v. *Topor*, 287 Mass. 473, 476, and "there is no room for any implication of further findings."  *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 562.  *Bottoms* v. *Carlz, ante*, 29, 33.

In the present case the principle that in the absence of a report of material facts the decree imports a finding of every fact essential to its entry is not applicable.  Compare *Harlow Realty Co.* v. *Whiting*, 308 Mass. 220, 223, 224. It follows that resort may not be had to any findings that otherwise could be implied from the decree entered by the judge.  *Viens* v. *Viens*, 302 Mass. 366, 367.  *Sullivan* v. *Quinlivan*, 308 Mass. 339, 341.  The decree must stand or fall upon the facts found in the report of material facts. Each of the parties in argument has treated the case as though the recitals of testimony by the judge constituted findings of fact.  We cannot adopt that view since the testimony is in some respects conflicting.

In the case at bar the report of facts was irregular.  The

respondent, however, if she had desired to secure a review of the facts found by the judge on the ground that they were plainly wrong on the evidence before him, should have taken appropriate steps in conformity to the statute, G. L. (Ter. Ed.) c. 215, § 12, to have had the evidence reported. She failed to do this. She was, however, entitled under the provisions of § 11 to require the judge to report the material facts found by him. *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 215, and cases cited. *Boston* v. *Dolan*, 298 Mass. 346, 349. *Sullivan* v. *Quinlivan*, 308 Mass. 339, 340. She could also have moved appropriately in the court below that the judge strike from the report the recitals of testimony and for a further finding of facts. Not having taken steps to see that the report came to us in strictly proper form, she is bound by its terms, *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 215, and, if the facts actually found support the decree, it must stand.

The facts actually found by the judge with relation to the deposit in dispute may be summarized as follows: The intestate, who was a resident of Lancaster in this Commonwealth, died on June 18, 1939, leaving as her heirs at law certain nieces, nephews, grandnephews, and a grandniece, the respondent. The intestate had lived for four or five years with the respondent's mother, where the respondent also lived. Upon the death of the respondent's mother, the intestate and the respondent went to live with the respondent's brother and his wife, where they were living at the time of the death of the intestate about a year and a half later. The name of the respondent had been written on the blank withdrawal order in the book of deposit and "the name" of Mrs. R. Layton was written as a witness. (Mrs. Layton was one of the witnesses at the hearing before the judge, whose testimony he recited in the report but as to which he made no material subsidiary or general findings.) The intestate did not sign the order. Two days before the death of the intestate, the respondent took this book of deposit from her (the respondent's) tin box and noticed that the order had not been signed by the intestate. She then went to the savings bank but was advised by an

officer of the bank that she could not make any withdrawal "as there was no evidence that she owned the book." This officer advised her to see a lawyer. On the day of the death of the intestate (June 18, 1939) the respondent went to an undertaking firm to arrange for the funeral of the intestate. A lawyer "was called in by the undertaker." He questioned the respondent "as to the assets of the estate as he wanted to be sure that his client, the undertaker, would be paid." The respondent told him that there was about $2,300. On June 27, 1939, she retained the firm of which this lawyer was a member to represent her "in regard to the estate." She signed a petition for administration. An administrator's bond was made out and on its reverse side she signed a statement that the estate consisted of personal property in the amount of $2,300. On July 18, 1939, her attorneys sent a letter to an attorney for one of the other heirs to the effect that the estate consisted of one bank book in the amount of $2,356 (the deposit in dispute), and that after funeral and probate expenses the residue "goes equally to seven nephews and nieces and the eighth portion is divided among the children of a deceased niece."

The burden of proof rested upon the petitioner to establish that title to the deposit in question was in the intestate at the time of her death. Upon the findings of the judge the proper conclusion is that the deposit in question stood in the name of the intestate upon the books of the savings bank at the time of her death. This being so, in the absence of any findings based upon the testimony the judge set forth in his report as to the circumstances under which the respondent acquired possession of the book of deposit, we cannot disturb the decree.

That the name of the respondent was written upon the withdrawal order by the intestate cannot avail the respondent. The statements of the respondent to her attorneys before referred to, her action in certifying the estate to be in an amount that included the deposit in question, and the fact that other than a deposit in the Clinton Trust Company of $111.50 (standing in the name

of the respondent) the deposit in dispute standing in the name of the intestate at the time of her death represented everything that the intestate owned, also support the conclusion that, at the time of the death of the intestate, the deposit was an asset of her estate. The judge found no facts which would justify a conclusion that the intestate made a gift of the deposit to the respondent.

*Decree affirmed.*